UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHANG LIU, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 22-cv-10638-ADB |
| EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., *and* BANK OF AMERICA, N.A. | * * * * | |
| Defendants. | * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Chang Liu ("Liu") brings this action against Experian Information Solutions,

Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Bank of America, N.A.

("Bank of America") (collectively, "Defendants"), pursuant to the Fair Credit Reporting Act, 15

U.S.C. § 1681 et seq. ("FCRA"), related to allegedly false reporting on Plaintiff's credit

report.  See [ECF No. 41 ("Amended Complaint" or "Am. Compl.")].  Currently pending before

the Court is Experian's Motion to Compel Arbitration, [ECF No. 60], which, for the following

reasons, is DENIED.

I.      **BACKGROUND**

        A.      **Factual Background**

The Court draws the following facts from the Amended Complaint and documents

submitted in support of the motion to compel arbitration, see Cullinane v. Uber Techs., Inc., 893

F.3d 53, 55 (1st Cir. 2018) (citation omitted), "construe[s] the record in the light most favorable

1

to the non-moving party[,] and draw[s] all reasonable inferences in its favor," <u>Air-Con, Inc. v.</u>

<u>Daikin Applied Latin Am., LLC</u>, 21 F.4th 168, 175 (1st Cir. 2021).

In 2021, Liu noticed that his Experian credit report included a Bank of America account,

even though he had never had a credit card with Bank of America.  [Am. Compl. ¶¶ 15–16].  Liu

reported the issue to Experian in May 2021, and provided Experian with his address, date of

birth, and Social Security number.  [<u>Id.</u> ¶ 17].  Experian, in turn, relayed the dispute to Bank of

America, which indicated that it had different personally identifying information for Liu (as well

as no Social Security number).  [<u>Id.</u> ¶ 18].  Nevertheless, Experian and Bank of America

continued to include the account on Liu's credit report.  [<u>Id.</u> ¶ 19].

In March 2022, Liu reported the issue to Experian again, as well as to Equifax, but they

did nothing to investigate or otherwise remedy the issue.  [Am. Compl. ¶¶ 24–32].  Plaintiff

asserts that as a result:

> [he] has been harmed in his daily life, by the impact that this derogatory information
> has had on his credit score and his ability to secure credit.  [He] has further been
> denied credit on a number of occasions due to the Defendants' continued reporting
> of this fraudulent account, and was unable to take advantage of historically low
> interest rates when he was attempting to purchase a home.  Instead, [he] was
> prevented from purchasing a home, and will now pay a much higher interest rate
> and incur additional expenses as a result of Defendants' actions.

[<u>Id.</u> ¶ 35].

Prior to that, in March 2020, Liu enrolled in CreditWorks, a credit product made

available through an Experian website.  [ECF No. 61-1 ¶¶ 1, 3; <u>id.</u> at 7].  To enroll, Liu entered

his personal information (name, address, phone number, and email address) and clicked "Create

Your Account."  [<u>Id.</u>].  The online enrollment form provided that "By clicking 'Create Your

Account': I accept and agree to your Terms of Use Agreement . . . ."  [<u>Id.</u>].  After enrolling, Liu

consistently used CreditWorks.  [<u>Id.</u> ¶ 5].  As of July 2023, when Experian filed the instant

motion, Liu had last signed into CreditWorks on June 12, 2022.  [<u>Id.</u>].

All versions of CreditWorks' Terms of Use Agreement ("Terms of Use") in effect during

Liu's enrollment include arbitration provisions ("Arbitration Provision").  See [ECF No. 61-1 at

11–12, 34–37].  The Arbitration Provision provides, in relevant part:

> [Experian Consumer Services ("ECS")] and you agree to arbitrate all disputes and
> claims between us arising out of or relating to this Agreement to the maximum
> extent permitted by law, except any disputes or claims which under governing law
> are not subject to arbitration.  This agreement to arbitrate is intended to be broadly
> interpreted and to make all disputes and claims between us directly relating to the
> provision of any Service and/or your use of any Website subject to arbitration to
> the fullest extent permitted by law.

[Id. at 34]; see also [id. at 11].  At all relevant times, Experian has been an affiliate of

ConsumerInfo.com, Inc. ("CIC"), which also does business as ECS.  [Id. ¶¶ 1–2].  "CIC/ECS

and [Experian] are both wholly-owned subsidiaries of Experian Holdings, Inc., and the parent

company is Experian plc."  [Id. at 2].  The Arbitration Provision further provides that:

> [f]or purposes of this arbitration provision, references to "ECS," "you," and "us"
> shall include our respective parent entities, subsidiaries, affiliates (including,
> without limitation, our service providers), agents, employees, predecessors in
> interest, successors and assigns, websites of the foregoing, as well as all authorized
> or unauthorized users or beneficiaries of Services and/or Websites or information
> under this or prior Agreements between us relating to Services and/or Websites.

[Id. at 34–35]; see also [id. at 11].

**B.      Procedural Background**

Liu filed his original complaint on April 28, 2022, alleging that Experian, Equifax, and

Bank of America had violated various provisions of the FCRA.  [ECF No. 1 ("Complaint" or

"Compl.")].  As to Experian, Liu brought counts for failing to investigate or conduct a reasonable

investigation (Count IV); "Failure to Assure Maximum Possible Accuracy" (Count V); and

failing to honor its obligation to remove fraudulent information from Liu's credit report (Count

VI).  [Compl. ¶¶ 53–69].  Experian answered the complaint on June 22, 2022.  [ECF No. 22].

The Court approved the parties' proposed scheduling order on July 19, 2022, which set a

November 11, 2022 deadline for amending pleadings and a February 17, 2023 deadline for completing fact discovery.  [ECF Nos. 30, 31].  The Court then granted the parties' motion to extend these deadlines to February 28, 2023 and April 3, 2023 respectively.  [ECF Nos. 37, 38].

On February 28, 2023, Liu filed an amended complaint, with the Defendants' consent. [Am. Compl.].  As further discussed below, as relevant to Experian, the Amended Complaint raises the same claims but added allegations related to Experian's conduct, in addition to removing some introductory, summarizing paragraphs and making some wording and typographical changes.  Compare [Compl.], with [Am. Compl.].  After Experian answered on March 13, 2023, [ECF No. 43], the Court granted the parties' joint motion for an additional extension of the fact discovery deadline to April 24, 2023.  [ECF No. 49, 50].

On April 27, 2023, the Court stayed the remaining case deadlines to allow the parties to mediate, [ECF No. 52], and on May 5, 2023, referred the case to mediation, [ECF No. 54].  On June 6, 2023, Judge Cabell reported that the mediation was unsuccessful and that further efforts to settle the case were not likely to be productive.  [ECF No. 58].  On June 7, 2023, the Court lifted the stay.  [ECF No. 59].

A month later, on July 7, 2023, Experian filed the instant motion to compel arbitration, [ECF No. 60], which Liu opposed on July 20, 2023, [ECF No. 63].

## II.      LEGAL STANDARD

This Court's review of Experian's motion is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16.  See 9 U.S.C. § 4.  "[T]he FAA requires courts to treat arbitration as 'a matter of contract' and enforce agreements to arbitrate 'according to their terms.'"  Air-Con, 21 F.4th at 174 (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019); and then citing 9 U.S.C. § 4).  The FAA does not compel "a party . . . to submit to

arbitration any dispute which [it] has not agreed so to submit[,]" McCarthy v. Azure, 22 F.3d

351, 354 (1st Cir. 1994) (citations omitted), but "a court must hold a party to its arbitration

contract just as the court would to any other kind [of contract]," Morgan v. Sundance, Inc., 596

U.S. 411, 418 (2022).

> Thus, [typically] a party that attempts to compel arbitration "must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope."

Hogan v. SPAR Grp., Inc., 914 F.3d 34, 38 (1st Cir. 2019) (quoting Ouadani v. TF Final Mile

LLC, 876 F.3d 31, 36 (1st Cir. 2017)).

"[D]istrict courts should apply the summary judgment standard to evaluate motions to

compel arbitration under the FAA." Air-Con, 21 F.4th at 175.  Under this standard, "[i]f the

non-moving party puts forward materials that create a genuine issue of fact about a dispute's

arbitrability [and issues of arbitrability have not been delegated to the arbitrator], the district

court 'shall proceed summarily' to trial to resolve that question." Id. (first citing 9 U.S.C. § 4;

and then citing Neb. Mach. Co., Inc. v. Cargotec Sols., LLC, 762 F.3d 737, 744 (8th Cir. 2014)).

**III.     DISCUSSION**

Experian asserts that (1) a valid arbitration agreement exists and (2) Experian is entitled

to invoke the arbitration clause, and (3) to the extent there is any dispute over the arbitrability of

Liu's claims, that issue has been delegated to the arbitrator.  [ECF No. 61 at 7–17].  Liu does not

contest that the Arbitration Provision is valid, nor does he directly contest that Experian would

be entitled to invoke it.  Instead, Liu argues that Experian has failed to establish that Liu's claims

fall within the scope of the Arbitration Provision, [ECF No. 63 at 15–18], and further, that even

if they do, Experian has waived any arbitration right it had through its participation in this

litigation (which, he argues, is an issue to be resolved by the Court, not the arbitrator), [id. at 7–15].

In reply, Experian states that the issue of waiver by litigation conduct has also been delegated to the arbitrator; that it has not waived its rights to arbitrate; that even if it did waive, its rights were revived by Liu's Amended Complaint; and finally, that it could not have waived its rights to arbitrate claims newly added to the Amended Complaint.  [ECF No. 67 at 3–11].  Likewise, Experian argues, the issue of arbitrability of Liu's claims has been delegated to the arbitrator.  [Id.].

A.      **Whether Liu's Claims Fall Within the Scope of the Arbitration Provision**

As referenced above, there is "a presumption that courts (not arbitrators) must 'resolve gateway disputes about whether a particular arbitration clause binds parties in a particular case.'" McKenzie v. Brannan, 19 F.4th 8, 17 (1st Cir. 2021) (quoting Barbosa v. Midland Credit Mgmt., Inc, 981 F.3d 82, 93 n.13 (1st Cir. 2020)).  That said, the Supreme Court has explained that this presumption is overcome

> [w]hen the parties' contract delegates the arbitrability question to an arbitrator, [and in such a case,] a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

Henry Schein, 139 S. Ct. at 529.  "Where there is a clear and unmistakable delegation of arbitrability issues, the court's proper inquiry 'before referring a dispute to an arbitrator' is limited to 'determin[ing] whether a valid arbitration agreement exists . . . .  [I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.'"  Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 28 (1st Cir. 2021) (first alteration in original) (quoting Henry Schein, 139 S. Ct. at 530).  As noted above, Liu does not

contest the validity of the Arbitration Provision, so the Court moves on to address whether the

Arbitration Provision evinces a clear and unmistakable delegation of arbitrability issues.

The Arbitration Provision provides that "[t]he arbitration will be governed by the

Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer

Related Disputes (collectively, 'AAA Rules') of the American Arbitration Association ('AAA'),

as modified by this Agreement . . . .  In all events, the AAA Rules shall govern the parties'

dispute."  [ECF No. 61-1 at 35]; see also [id. at 11 (same)].  Rule 7(a) of the AAA Rules, in turn,

states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including

any objections with respect to the existence, scope, or validity of the arbitration agreement or to

the arbitrability of any claim or counterclaim, without any need to refer such matters first to a

court."  Am. Arb. Ass'n, Com. Arb. Rules and Mediation Procs., Rule 7(a) (2022).[1]

"Incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the

parties' intent to delegate arbitrability issues to the arbitrator."  Bossé, 992 F.3d at 29 (citing

Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 11 (1st Cir. 2009)); see also Awuah, 554 F.3d at 11

("Rule 7(a) says plainly that the arbitrator may 'rule on his or her own jurisdiction' including any

objection to the 'existence, scope or validity of the arbitration agreement.'  This is about as 'clear

and unmistakable' as language can get, meeting the standard we have followed." (citations

omitted)).[2]  Thus, the Court finds that issues of arbitrability, including whether Liu's claims fall

---

[1] Similarly, Rule 7(a) in the previous version of the AAA's Commercial Rules, effective
September 2013 through September 2022, states that the "arbitrator shall have the power to rule
on his or her own jurisdiction, including any objections with respect to the existence, scope, or
validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Am.
Arb. Ass'n, Com. Arb. Rules and Mediation Procs., Rule 7(a) (2013).

[2] See also Mendoza v. Fred Haas Motors, Ltd., 825 F. App'x 200, 202 (5th Cir. 2020)
("Incorporating the [AAA Commercial] rules into the agreement 'presents clear and
unmistakable evidence that the parties agreed to arbitrate arbitrability.'" (quoting Petrofac, Inc.
v. DynMcDermott Petrol. Operations Co., 687 F.3d 671, 675 (5th Cir. 2012))); Blanton v.

in the scope of the Arbitration Agreement, have been delegated to the arbitrator.  See Bossé, 992
F.3d at 28 (holding incorporation of the AAA rules was clear and unmistakable evidence of
intent to delegate the "arbitrability dispute" as to whether the "arbitration agreement and the
delegation clause . . . appl[ied] to [plaintiff's] particular claims" to the arbitrator).

**B.     Waiver**

Liu next argues that regardless of whether or not his claims fall within the scope of the
Arbitration Provision, Experian has waived its right to arbitrate those claims, since it has "s[at]
on its rights" and litigated this case for over a year.  [ECF No. 63 at 7].  Experian first responds
that this too is an issue to be decided by the arbitrator.  [ECF No. 67 at 3–6].  It further argues
that, even assuming that the issue should be resolved by the Court, (1) Experian's conduct in this
litigation does not amount to waiver, and (2) even if it did, the Amended Complaint revived
Experian's arbitration rights.  [Id. at 3–11].

1.     Delegation

With regard to the threshold question of who decides whether Experian has waived its
right to arbitrate, Liu points to Marie v. Allied Home Mortg. Corp., 402 F.3d 1 (1st Cir. 2005), in
which the First Circuit held that, even where a contractual provision delegates questions of
arbitrability, "waiver by conduct, at least where due to litigation related activity, is presumptively
an issue for the court."  [ECF No. 63 at 13 (quoting Marie, 402 F.3d at 14)].  Liu also points to
the Court's order in In re Intuniv Antitrust Litig., which explained that "[s]ince 2005, courts in

---

Domino's Pizza Franchising LLC, 962 F.3d 842, 846 (6th Cir. 2020); Richardson v. Coverall N.
Am., Inc., 811 F. App'x 100, 103 (3d Cir. 2020); Dish Network L.L.C. v. Ray, 900 F.3d 1240,
1246 (10th Cir. 2018); Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015); Fallo v.
High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009); Contec Corp. v. Remote Sol. Co., 398 F.3d
205, 208 (2d Cir. 2005); Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327,
1332 (11th Cir. 2005).

this circuit have applied <u>Marie</u> and evaluated waiver claims premised on litigation conduct rather than deferring to the arbitrator." <u>Id.</u> (quoting <u>Intuniv</u>, No. 16-cv-12653, 2021 WL 517386, at *8 (D. Mass. Feb. 11, 2021) (first citing <u>Christensen v. Barclays Bank Del.</u>, No. 18-cv-12280, 2019 WL 1921710, at *5 (D. Mass. Apr. 30, 2019); then citing <u>Binienda v. Atwells Realty Corp.</u>, No. 15-cv-00253, 2018 WL 1271443, at *2 (D.R.I. Mar. 9, 2018); and then citing <u>Cutler Assocs., Inc. v. Palace Constr., LLC</u>, 132 F. Supp. 3d 191, 199–200 (D. Mass. 2015))), <u>reconsideration denied</u>, No. 16-cv-12653, 2023 WL 2662173 (D. Mass. Mar. 15, 2023)].  In <u>Intuniv</u>, the Court held that although issues of arbitrability had been delegated to the arbitrator, "whether [the defendant] has forfeited its right to arbitrate claims against it by participating in this lawsuit is a different issue that does not depend on the underlying arbitrability of the dispute." 2021 WL 517386, at *8.

Experian, also relying on <u>Marie</u> and addressing the Court's <u>Intuniv</u> order, argues that while courts presumptively decide the issue of waiver based on litigation conduct, "[t]hat presumption . . . can be rebutted 'where there is "clear and unmistakable evidence" of such an intent in the arbitration agreement.'"  [ECF No. 67 at 3 (quoting <u>Marie</u>, 402 F.3d at 14)].  According to Experian, the Arbitration Provision in this case meaningfully differs from those in <u>Intuniv</u>, where there was no clear evidence that the issue of waiver based on litigation conduct was delegated.  [ECF No. 67 at 4].  Specifically, Experian argues, <u>see</u> [<u>id.</u>], that the following language in the Arbitration Provision provides such clear and unmistakable evidence:

> <u>All issues are for the arbitrator to decide</u>, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

[ECF No. 61-1 at 35–36 (emphasis added)]; <u>see also</u> [<u>id.</u> at 11].

9

Liu, in turn, asserts, [ECF No. 63 at 13–14], that the agreement in <u>Marie</u> also included a broad delegation provision which stated that the parties "agree[d] to submit to final and binding arbitration any and all disputes, claims (whether in tort, contract, statutory, or otherwise), and disagreements concerning the interpretation or application of this Agreement . . . including the arbitrability of any such controversy or claim." <u>Marie</u>, 402 F.3d at 14.  Nevertheless, the First Circuit held that "arbitrability" in this context appeared to relate to substantive disputes such as "whether a particular kind of dispute at issue falls within the scope of the arbitration clause," based on the surrounding references to "which types of claims should be arbitrated and which should not be," not waiver by litigation conduct.  <u>Id.</u> at 15.  The <u>Marie</u> Court also noted that there were no "references to waiver or similar terms anywhere in the arbitration agreement," and thus concluded that this did not evince a clear and unmistakable intent to delegate waiver by litigation conduct to the arbitrator.  <u>Id.</u>

Courts that have evaluated this issue in the context of the present Arbitration Provision are split.  Several out-of-circuit courts have agreed with Experian that the broad language of the Arbitration Provision evinces clear and unmistakable evidence of an intent to delegate "substantive" arbitrability issues, which includes waiver by litigation conduct.  <u>See, e.g.</u>, <u>Coulter v. Experian Info. Sols., Inc.</u>, No. 20-cv-01814, 2021 WL 735726, at *4–5 (E.D. Pa. Feb. 25, 2021) ("This provision constitutes a 'clear and unmistakable' delegation clause under <u>Henry S[c]hein</u> and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including . . . whether Defendant waived its right to arbitrate."); <u>Cline v. Equifax Info. Servs., LLC</u>, No. 22-cv-02021, 2023 WL 3872392, at *3 (S.D. Ind. May 30, 2023) ("This language demonstrates the parties' intent to arbitrate even issues of substantive arbitrability that would otherwise be decided by a court. . . . Whether Experian delayed too long and therefore participated too much

in this litigation before seeking arbitration is an issue of arbitrability."); Ewers v. Trans Union,

LLC, No. 22-cv-02474, 2023 WL 5435921 (S.D. Ind. Aug. 17, 2023) (same).

On the other hand, other courts have agreed with Liu that this "all issues" language does

not evince clear and unmistakable evidence of delegation of this issue.  See, e.g., Coronel v.

Bank of Am., N.A., No. 19-cv-08492, 2022 WL 3443985, at *3 (D.N.J. Aug. 17, 2022) ("While

the delegation provision says '[a]ll issues are for the arbitrator to decide,' it does not evince a

clear and unmistakable intent to have the arbitrator decide the issue of waiver . . . [because] the

delegation provision does not mention waiver explicitly . . . [a]nd there is no indication that '[a]ll

issues' include those issues that arise only during litigation." (citing Ehleiter v. Grapetree Shores,

Inc., 482 F.3d 207, 222 (3d Cir. 2007))); Smith v. Experian Info. Sols., Inc., No. 22-cv-06471,

2023 WL 6057377, at *4 (D.N.J. Sept. 14, 2023) (same); Solis v. Experian Info. Sols., Inc., 629

F. Supp. 3d 1016, 1019–20 (C.D. Cal. 2022) ("The language in the [Arbitration Provision]—

'[a]ll issues are for the arbitrator to decide, including the scope and enforceability,' . . . is . . .

insufficient to overcome the presumption. . . . [T]he language here is not so 'clear' and

'unmistakable' to encompass waiver through litigation conduct."); Alvarez v. Experian Info.

Sols., Inc., No. 19-cv-03343, 2023 WL 2519249, at *7 (E.D.N.Y. Mar. 15, 2023) (explaining

that "[w]hen the party seeking arbitration has participated in litigation regarding the dispute, the

district court can properly decide the question of waiver" (quoting Meyer v. Uber Techs., Inc.,

868 F.3d 66, 80–81 (2d Cir. 2017))); Cimillo v. Experian Info. Sols., Inc., No. 21-cv-09132,

2023 WL 2473403, at *9 (S.D.N.Y. Mar. 13, 2023) (same).

The Court agrees with these latter cases and finds that without an explicit reference to

waiver or similar terms, the language of the Arbitration Provision, though broad, is insufficient

to evince a "clear and unmistakable" intent by the parties to have an arbitrator decide the issue of

waiver by litigation conduct.  Accordingly, the Court will rule on the issue of waiver.

          2.          Waiver by Litigation Conduct

Prior to the Supreme Court's recent opinion in Morgan v. Sundance, Inc., 596 U.S. 411

(2022), courts in the First Circuit evaluated waiver by litigation conduct based on "a list of non-

exclusive factors," including:

> (1) whether the parties participated in a lawsuit or took other action inconsistent
> with arbitration; (2) whether the litigation machinery has been substantially
> invoked and the parties [are] well into preparation of a lawsuit by the time an
> intention to arbitrate [is] communicated; (3) whether there has been a long
> delay and trial is near at hand; (4) whether the party seeking to compel arbitration
> has invoked the jurisdiction of the court by filing a counterclaim; and (5) whether
> discovery not available in arbitration has occurred; and (6) whether the party
> asserting waiver has suffered prejudice.

FPE Found. v. Cohen, 801 F.3d 25, 29 (1st Cir. 2015) (citation and internal quotation marks

omitted).

In Morgan, in rejecting the Eighth Circuit's "arbitration-specific waiver rule demanding a

showing of prejudice," the Court clarified that waiver in the arbitration context, as with waiver of

any other contractual right, is "the intentional relinquishment or abandonment of a known right."

596 U.S. at 417 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).  This analysis

focuses on the conduct of the allegedly waiving party, and specifically on whether that party

"knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right."

Morgan, 596 U.S. at 419.  Thus, the Court held that prejudice to the other party should not be

considered.  Id.  In so finding, "the Court . . . abrogated a decision in this circuit, Joca-Roca Real

Estate, LLC v. Brennan, 772 F.3d 945 (1st Cir. 2014), which set out the factors used in FPE

[outlined above], including the sixth prejudice factor."  Crean v. Morgan Stanley Smith Barney,

LLC, 652 F. Supp. 3d 171, 182 (D. Mass. 2023).  Therefore, in conducting its analysis, the Court

will not consider prejudice but will only consider the other <u>FPE</u> factors to the extent they elucidate whether Experian "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." <u>Morgan</u>, 596 U.S. at 419.  Even after <u>Morgan</u>, "there is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts." <u>Tyco Int'l Ltd. v. Swartz</u>, 422 F.3d 41, 46 (1st Cir. 2005).  Finally, "the burden of proving waiver [of any contractual right] devolves upon the party asserting it." <u>Aoude v. Mobil Oil Corp.</u>, 862 F.2d 890, 893 (1st Cir. 1988) (applying Massachusetts law).

Liu asserts that Experian was aware of the Arbitration Provision even before the Complaint was filed in April 2022 (given the many prior lawsuits in which Experian had invoked the Provision to compel arbitration).  [ECF No. 63 at 11].  Additionally, Liu's CreditWorks "membership [going back to 2020] . . . and Experian's ability to use that membership to force arbitration" were not "news to Experian."  [<u>Id.</u> at 11 n.4].  Nevertheless, Experian did not raise arbitration as an affirmative defense in its answer to either Liu's Complaint or Amended Complaint or "even bring[] up the thought of arbitration," until filing the instant motion to compel in July 2023.  [<u>Id.</u> at 10].  Thus, according to Liu, by the time Experian sought to compel arbitration in July 2023, it had waited 15 months to assert or even reference a known right, [<u>id.</u>], and he cites cases where the First Circuit found waiver in the context of similar and even shorter delays, [<u>id.</u> (collecting cases)].

Additionally, Liu asserts that Experian actively participated in this litigation, including by "(1) serving 32 Requests for Production on the Plaintiff, (2) propounding 21 Interrogatories on the Plaintiff, (3) taking Plaintiff's deposition, (4) participating in a Settlement Conference, (5) serving an Expert Report, (6) responding to Plaintiff's Complaint [(without raising the defense of arbitration)], and then (7) stipulating to the Plaintiff's filing of an Amended Complaint . . . and

(8) responding to that Amended Complaint [(with an Answer that still did not raise arbitration as a defense)]." [ECF No. 63 at 9 (emphasis omitted)]. Liu also notes that although Experian did not file counterclaims, it did include in its answers to both the Complaint and Amended Complaint requests for an award of attorneys' fees and costs. [Id. 10]. Liu thus contends that in engaging in this conduct, Experian "substantially invoked" the "litigation machinery." [Id. at 9 (quoting FPE, 801 F.3d at 29)]. Finally, Liu argues, citing to the AAA's Consumer Arbitration Rules ("Consumer Rules"), that "[t]he discovery taken in this action was extensive and far beyond what is typically permitted in arbitration." [Id. at 10].

Experian does not dispute that it was aware of the Arbitration Provision prior to its motion to compel in July 2023, but points out that "mere delay in asserting a right to arbitrate, without more, does not require a finding of waiver." [ECF No. 67 at 8 (quoting Joca-Roca Real Estate, LLC, 772 F.3d at 950)]. It argues that the cases Liu cites for this point were decided pre-Morgan, and turned on prejudice rather than simply on the length of the delay.

Experian also asserts that its litigation conduct to date has not been "substantial," because it has not sought or obtained rulings on the merits of Liu's claims. In support of this point, Experian asserts that

> [w]hile the First Circuit has yet to address waiver post-Morgan, other courts evaluating the issue of waiver have begun to develop a bright line as to what actions will constitute a waiver of a contractual right to arbitrate. Specifically, courts have looked to whether the party invoking arbitration affirmatively litigated the substantive merits of the claims, and then later moved to compel arbitration as an apparent forum-shopping tactic.

[ECF No. 67 at 7–8 (collecting cases)].

Finally, with regards to its discovery-related conduct, Experian argues that in the First Circuit, "engaging in discovery that would be allowed in arbitration is generally insufficient to establish waiver," and that Liu has failed to establish that the discovery undertaken by Experian

14

would not be available in arbitration.  [ECF No. 67 at 9].  In support of this point, Experian

explains that it is not the AAA's Consumer Rules, but the AAA's "Commercial Dispute

Resolution Procedures" ("Commercial Rules") that are incorporated in the Arbitration Provision,

and that the Commercial Rules give the arbitrator broader discovery authority.  [Id. at 9 n.3].

Although a close question, after evaluating both parties' arguments and the totality of the

circumstances, the Court finds that Experian has acted inconsistently with its rights to arbitrate

and has therefore waived those rights.  Experian does not deny that it was aware of the

Arbitration Provision even before Liu filed his complaint and though it is not entirely clear when

Experian learned of Liu's CreditWorks membership, there is no suggestion that it only recently

learned this fact.  Thus, Experian appears to have delayed in asserting its known right, only

asserting it after the close of fact discovery and after a failed, court-sponsored mediation.

Though not dispositive, this provides support for undue delay and waiver.  See Rankin v. Allstate

Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003) ("We need not fashion some mechanical rule embracing

all possible cases.  It is sufficient here that by waiting until after discovery had closed and the

long-scheduled trial date had almost arrived, Allstate did unduly delay in invoking the arbitration

clause in this case."); White v. Samsung Elecs. Am., Inc., 61 F.4th 334, 340–41 (3d Cir. 2023)

(noting, as relevant to its finding of waiver, that "from the outset of litigation, Samsung was on

notice that plaintiffs' claims could be arbitrable, . . . . should have known definitively [by

November 2018] that plaintiffs had agreed to arbitrate," and yet they, "did not inform plaintiffs

of the potential for arbitration at any point during the litigation before May 2020, when it

informed them seven days in advance that it intended to raise it to the Magistrate Judge"); cf.

Chong v. Bank of Am., N.A., No. 22-cv-00151, 2022 WL 16832742, at *2 (D. Haw. Nov. 8,

2022) (finding no waiver where "within a month of entering an appearance—Experian notified

15

Plaintiff of the arbitration clause in the CreditWorks agreement, and Experian began asserting its right to arbitrate by asking Plaintiff to stipulate to arbitrate"); Alvarez v. Experian Info. Sols., Inc., 661 F. Supp. 3d 18, 32 (E.D.N.Y. 2023) (no waiver where "Experian immediately moved to enforce its right to arbitrate once it learned of the Arbitration Agreement, and there was limited pre-trial activity in that short window of time").

Further, although Experian has not engaged in merits litigation, and courts both before and after Morgan have found that relevant to waiver, courts also continue to consider parties' non-merits litigation.  See, e.g., White, 61 F.4th at 340 (finding relevant that the party seeking arbitration "engaged in multiple instances of non-merits motion practice and acquiesced to the District Court's pre-trial order"); cf. Crean, 652 F. Supp. 3d at 183 (finding no waiver where a party had asserted arbitration as an affirmative defense in its answer, "did not respond to the interrogatories, documents requests, and requests for admission," and other than "likely serving initial disclosures . . . there [wa]s little, if any, indication that the defendant initiated any discovery requests").  Even if some courts have adopted a de facto per se rule requiring merits litigation before finding waiver, that has never been the rule in this Circuit, and the Court declines to adopt such a rule now, particularly given the Supreme Court's admonishment against creating arbitration-specific waiver rules.  See Morgan, 596 U.S. at 419 ("[T]he text of the FAA makes clear that courts are not to create arbitration-specific procedural rules like the one we address here.").  Over the fifteen months since the case was filed, Experian has filed two answers (without raising arbitration as an affirmative defense), agreed to Liu filing an amended complaint, engaged in and completed discovery, participated in a court-sponsored mediation, and

16

sought extensions of case deadlines.[3]  Whether or not some or all of that discovery may be

available in arbitration,[4] the Court finds that the totality of Experian's conduct in this litigation

has been inconsistent with asserting a right to arbitrate and, in fact, could have been intended to

lull Liu into thinking that Experian had foregone any option of arbitration in favor of litigation.

---

[3] The Court agrees with Experian that the fact that it made an expert disclosure in compliance
with a court deadline, after filing its motion to compel, does not support a finding of waiver.

[4] Although the Court does not rule on the scope of available discovery under the Arbitration
Provision, as this issue would seem to fall under the broad delegation clause, [ECF No. 61-1 at
35–36 (emphasis added)]; see also [id. at 11], it does appear from the Arbitration Provision's
plain language that it is the AAA's Commercial Rules that govern, rather than the Consumer
Rules.  The Arbitration Provision provides that "Discovery and/or the exchange of non-
privileged information relevant to the dispute will be governed by the AAA Rules," and defines
"AAA Rules" as the "Commercial Dispute Resolution Procedures and the Supplementary
Procedures for Consumer Related Disputes."  [Id. at 46].

The Commercial Rules, in turn, do seem to contemplate broader discovery than the Consumer
Rules.  Rule 22 of the AAA Consumer Rules provides that

> the arbitrator may direct 1) specific documents and other information to be shared
> between the consumer and business, and 2) that the consumer and business identify
> the witnesses, if any, they plan to have testify at the hearing.  . . . (c) No other
> exchange of information beyond what is provided for in section (a) above is
> contemplated under these Rules, unless an arbitrator determines further information
> exchange is needed to provide for a fundamentally fair process.

[ECF No. 63 at 11 (quoting Am. Arb. Ass'n, Consumer Arbitration Rules, Rule 22 (2014),
https://adr.org/sites/default/files/Consumer%20Rules.pdf)].  Rule 22 of the Commercial Rules,
on the other hand, states that the arbitrator may "manage any necessary exchange of information
among the parties with a view to achieving an efficient and economical resolution of the dispute,
while at the same time promoting equality of treatment and safeguarding each party's
opportunity to fairly present its claims and defenses," and specifically may "require the parties,
in response to reasonable document requests, to make available to the other party documents, in
the responding party's possession or custody, not otherwise readily available to the party seeking
the documents, reasonably believed by the party seeking the documents to exist and to be
relevant and material to the outcome of disputed issues."  Am. Arb. Ass'n, Com. Arb. Rules and
Mediation Procs., Rule 22 (2013), https://adr.org/sites/default/files/Commercial%20Rules.pdf/.
Likewise, the Supplementary Procedures for Consumer Related Disputes do not appear to
address discovery directly.  See Am. Arb. Ass'n, Consumer-Related Disputes Supplementary
Procs. (2014), https://www.adr.org/sites/default/files/Consumer-
Related%20Disputes%20Supplementary%20Procedures%20Sep%2015%2C%202005.pdf.

See Soriano v. Experian Info. Sols., Inc., No. 22-cv-00197, 2022 WL 6734860, at *3 (M.D. Fla. Oct. 11, 2022) ("For nearly six months, Experian invoked the juridical process and litigated this case with no indication it was contemplating arbitration.  Experian filed two answers, exchanged written discovery, and attended mediation.  And when mediation failed, Experian participated in a case management conference and submitted a case management report asking for a jury trial— all without mentioning arbitration.  From all appearances, then, Experian intended to have [plaintiff's] claims adjudicated in court.  These actions, viewed in combination, constitute conduct wholly inconsistent with the right to arbitration."), objections overruled, No. 22-cv-00197, 2022 WL 17551786 (M.D. Fla. Dec. 9, 2022).

In evaluating this "case . . . on its particular facts," Tyco Int'l, 422 F.3d at 46, the Court finds that Experian has waived its rights to arbitrate Liu's claims against it.

3.      Liu's Amended Complaint

Experian additionally argues that if it has waived its rights to compel arbitration, Liu's Amended Complaint, filed on February 28, 2023, revived those rights.  [ECF No. 67 at 11]. Further, even if the Amended Complaint did not revive Experian's rights to arbitrate the claims in the Complaint, it could not have waived the right to arbitrate the "new claims . . . not pleaded in the original complaint."  [Id.].

The First Circuit does not appear to have addressed the existence of this doctrine in this context.  Citing Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011), Experian urges that "'courts will permit the defendant to rescind [an] earlier waiver' where, as here, an amended complaint 'changes the scope or theory of the plaintiff's claims.'"  [ECF No. 67 at 11 (quoting Krinsk, 654 F.3d at 1202)].  Although Experian does not quote this portion of the opinion, Krinsk also states that "a defendant's waiver of the right to compel arbitration is not automatically nullified by the plaintiff's filing of an amended complaint."  654 F.3d at 1202

18

(citing Gilmore v. Shearson/Am. Express Inc., 811 F.2d 108, 112 (2d Cir. 1987), overruled on

other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271 (1988)).

Further, Krinsk recognized that "courts have refused to revive the right to compel arbitration

where the amended complaint has made only minor factual changes." Id. at 1203 (first citing

Gilmore, 811 F.2d at 113–14; and then citing Weight Watchers of Quebec, Ltd. v. Weight

Watchers Int'l, Inc., 398 F. Supp. 1057, 1060 (E.D.N.Y. 1975)).

Here, as relevant to Experian, the Amended Complaint removes some introductory

paragraphs, compare [Compl. ¶¶ 1–3], with [Am. Compl.], and makes some wording and

typographical changes, compare [Compl.], with [Am. Compl.].  It also adds allegations regarding

Experian's conduct, including that Liu reached out to Experian about the allegedly fraudulent

account not once (as was originally alleged) but twice, and that during one of these instances,

Experian learned that Equifax had different information for Liu than Liu provided Experian,

compare [Compl.], with [Am. Compl. ¶¶ 17–19].  Although Liu describes these changes as

"assert[ing] additional violations of the FCRA," [ECF No. 63 at 10], the Amended Complaint

nonetheless asserts the same causes of action against Experian.

The Court concludes that these relatively modest additions do not so fundamentally

change the "scope or theory of the plaintiff's claims" to have revived Experian's rights to

arbitrate.  See Krinsk, 654 F.3d at 1202.  Likewise the Court does not find that these new

allegations created wholly new rights to arbitrate, which Experian could not have waived through

its previous litigation conduct.  The Amended Complaint raises functionally the same claims as

those raised in the original complaint, over which Experian has waived its rights to arbitrate.

Accordingly, Experian's motion to stay Liu's claims against it and compel arbitration is

DENIED.

## IV.       CONCLUSION

For the above reasons, Experian's motion to compel arbitration, [ECF No. 60], is

DENIED.

**SO ORDERED.**

January 26, 2024                                                    /s/ Allison D. Burroughs
                                                                           ALLISON D. BURROUGHS
                                                                           U.S. DISTRICT JUDGE